IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PEDRO CHAIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 11-644-GMS |
| PERRY PHELPS *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

### I. **INTRODUCTION**

On July 21, 2011, Plaintiff Pedro Chairez ("Chairez") initiated this *pro se* lawsuit against Defendants employed at James T. Vaughn Correctional Center ("JTVCC"). (D.I. 1.) Chairez brought this suit pursuant to 42 U.S.C. § 1983, alleging excessive force, unreasonable conditions of confinement, violation of his Due Process rights, and unreasonable search and seizure. (*Id.*) Chairez filed two Amended Complaints to add Defendants, Lieutenant Reynolds (D.I. 11) and Deputy Warden Pierce ("Pierce"). (D.I. 49.) To date, the remaining defendants in this action are Lieutenant Mark Daum ("Daum"), Lieutenant Brian Reynolds ("Reynolds"), former Warden Perry Phelps ("Phelps"), and former Deputy Warden Pierce ("Pierce") (collectively, "Defendants").[1]

Presently before the court is a Defendants' Motion for Summary Judgment on all of Plaintiff's claims. (D.I. 71.) For the reasons that follow, the court will grant Defendants' Motion

---

[1] On August 22, 2013 Plaintiff dismissed Phelps from the conditions of confinement claims. (D.I. 49.) Plaintiff dismissed all "Unknown Officers" April 8, 2016. (D.I. 60.)

as to the Due Process and search and seizure claims and deny Defendants' Motion as to excessive force and conditions of confinement claims.

## II. BACKGROUND

Chairez arrived from Arizona at JTVCC in May of 2011. (D.I. 72.) After Chairez's requests for a transfer back to Arizona were denied, Chairez's continuous refusals to "cuff up" resulted in three incidents which led to the instant action. (D.I. 11.) Chairez and Defendants agree that in each incident where a pepper agent was used, Chairez had refused orders. (*Id.*)

The first incident occurred on June 7, 2011 when Chairez refused to "cuff up" in the exercise yard. (D.I. 72.) Chairez told officers to "[d]o what you have to do, I'm not coming out." (*Id.*) As a result of his continued refusal to "cuff up," the Quick Response Team ("QRT") was deployed to remove Chairez using pepper balls. Chairez was able to maneuver away from the pepper balls, but QRT was able to subdue Chairez and force him to the ground. (*Id.* at 11.) A nurse was called to the scene to examine Chairez and she found no injuries. (*Id.*)

During the second incident, on June 8, 2011, Chairez was removed from his cell after refusing to "cuff up" during a routine cell search. (*Id.*) Plaintiff refused to leave, took off his glasses, and positioned himself in the back of his cell. (*Id.*) After refusing to comply with the cell search, the QRT team was called. (*Id.*) Officers did not use force initially. (*Id.*) After Chairez refused to cuff up for the QRT, officers sprayed capstun through the cell and eventually subdued Chairez. (*Id.*) Chairez alleges that during the incident Defendants kicked him in the ribs and hit him with a metal pipe. (*Id.*) Medical records reveal Chairez's injuries consisted of red marks on his back and neck. (*Id.*) X-rays taken of Chairez's ribs were normal. (*Id.*) Following the incident, Chairez was placed in confinement where he complains of cold temperatures, less exercise than normal, and being unnecessarily placed in 24-hour restraints for observation. (D.I. 11, ¶ 19-24.)

2

While Chairez was in 24-hour restraints, he was only wearing boxers, had handcuffs locked at a ninety degree angle, and wore shackles around his legs and abdominal region. (D.I. 1 at 5.)

The last incident took place on September 27, 2011, when Daum and an Unknown Officer assisted by the QRT forcibly removed Chairez from the exercise yard after Chairez refused to "cuff up." (D.I. 11, ¶ 1.) While lying face down on the ground surrounded by officers, Chairez asserts an officer kneed him in the temple multiple times. (D.I. 11, ¶ 3.) According to Chairez, while restrained and not resisting, Daum emptied a can of pepper spray in his face. (*Id.*) Following the incident, Chairez was taken to medical staff who noted lacerations on his head. (*Id.*)

Plaintiff asserts that since his transfer to SHU he has been subject to three unconstitutional "shake downs" a day where his cell is searched. (D.I. 11, ¶ 35.) Chairez also alleges that he never received a disciplinary notice from the June 8, 2011 incident and was not afforded the right to call a witness to his disciplinary hearing four months after the incident. (D.I. 11, ¶ 8.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d at 393.[2] A fact is material only if it might affect the outcome of the suit.

---

[2] A *pro se* plaintiff still has "the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'" *See Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Chairez cannot generate a genuine dispute of material fact solely on unsubstantiated allegations in the complaint. *See Harp v. Rahme*, 984 F. Supp. 2d 398, 409 (E.D. Pa.

3

*Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.*

In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.* In determining the appropriateness of summary judgment, a court must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, [but] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV. DISCUSSION

The Defendants contend that, based on the available evidence of record, each of Chairez's claims fails as a matter of law. The court disagrees.

### A. Excessive Force

With excessive force claims, "[t]he 'core judicial inquiry,' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The court evaluates "good faith" by examining (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005).

---

2013) ("Plaintiff's *pro se* status does not eliminate her obligation to allege specific facts, substantiated by evidence on the record.").

4

Chairez's claim asserts that the Defendants' use of pepper spray, pepper spray balls, and "powerful blows" to his head while he was detained were excessive. (D.I. 1 at 4.) Defendants respond in part by citing Lieutenant Daum's declaration and the incident reports filed on June 8, 9, and September 27, 2011. (D.I. 73.) They contend that the use of pepper spray and physical force necessary to subdue Chairez was only as much as was needed to maintain order. (D.I. 72 at 13; 73.) On the other hand, Chairez provides the Affidavit of Howard Page (D.I. 13), in which Page writes that during the June 8, 2011 incident Chairez sustained "powerful blows," while restrained, subdued, pinned, and not fighting when an officer kicked him multiple times in his head. (*Id.*) These and other competing factual assertions raise a genuine issue for a jury to decide whether Defendants utilized excessive force to subdue Plaintiff. Thus, the court cannot now determine whether Defendants should be shielded by the doctrine of qualified immunity.[3]

### B. <u>Conditions of Confinement</u>

The Eighth Amendment of the United States Constitution protects those convicted of crimes from "cruel and unusual punishment." U.S. CONST. AMEND. VIII. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth

---

[3] Defendants seek dismissal on the grounds of qualified immunity (D.I. 72.) Defendants argue qualified immunity is appropriate on all grounds asserted because no unconstitutional use of excessive force occurred, and even if excessive force was used, a reasonable officer confronting the situation in which Defendants found themselves would believe Defendants' conduct was lawful.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The question of "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007). "[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed.Appx. 788, 791 n.3 (3d Cir. 2009).

A full analysis of whether qualified immunity applies to Plaintiff's claims against Defendants is premature because there are unresolved questions of fact relevant to the analysis. Accordingly, the court will deny the motion to dismiss on the grounds of qualified immunity at this time.

Amendment scrutiny, however. . . . To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim. . . ."). Thus, in evaluating whether the conditions of confinement pass constitutional muster, the court must consider both an objective component—"Was the deprivation sufficiently serious?"—and a subjective component—"Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective prong requires that "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As for the subjective prong, a prison official's inadvertent failure to remedy a wrong is not actionable; he or she must demonstrate "deliberate indifference" to inmate health and safety. *Id.*

Chairez claims the conditions in the SHU were too cold, that he was not allowed to exercise enough, that he was denied privileges in the SHU such as reading material, and that the use of 24-hour restraints following the June 8, 2011 incident was unnecessary and unconstitutional. The record does not support Chairez's claims regarding the alleged deprivations concerning temperature, exercise (D.I. 11), or reading material.[4] The court cannot, however, at this time rule

---

[4] Plaintiff, was provided soap, a toothbrush, toothpaste, and a wash cloth to be returned to staff after use. (D.I. 1 at 7.) Beyond his bare assertions that isolation was uncomfortable, there is no evidence that conditions remained "sufficiently serious" to implicate Eight Amendment concerns. *See Wilson*, 501 U.S. at 298 ("The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.").

The record is also devoid of evidence that would support an inference of deliberate indifference, i.e., the Defendants "disregard[ed] a risk of harm of which [they were] aware." *See Farmer*, 511 U.S. at 837. Chairez filed grievances stating that he was cold and was deprived of his personal possessions while in isolation. (D.I. 11.) Thereafter, Defendants responded to the grievances and allowed Chairez to order more clothing. In other words, the evidence fails to indicate (1) what the risk was; and (2) whether the Defendants knew of it. There is no genuine dispute

on Chairez's claims concerning whether the use of 24-hour restraints was improper. No party disputes that Chairez was placed in 24-hour restraints after the June 8, 2011 incident. (D.I. 72 at 20.) Chairez filed an interrogatory request asking Defendants to "[s]tate exactly what the 24 hr. restraints consist of and where they're placed, and where inmates are detained for this practice?" (D.I. 57, ¶ 10.) Defendants objected stating "the requirements are governed by information protected by 11 Del. C. 4322." (*Id.*)[5] The Supremacy Clause aside, to make a proper determination on this claim, the court orders that Defendants provide a copy of the 24-hour restraint policy for *in camera* review, forthwith.

## C. Due Process

Chairez claims that Defendants Reynolds and Phelps denied him Due Process by failing to provide him with the Rules of Conduct, and the opportunity to confront accusers and call witnesses during his disciplinary proceedings. (D.I. 11.) The record shows, however, that the Rules of Conduct were available in the law library and that Chairez did not request the presence any

---

for trial concerning the Defendants' deliberate indifference.

While in confinement, the lack of exercise "only rises to a constitutional level 'where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened...'" *Wyant v. Correctional Med. Servs.* 2005 WL 2864787 at *4 (D. Del. Nov. 1, 2005) (quoting *Frazier v. Ward*, 426 F.Supp. 1354 (1977)). While in confinement, Chairez was allowed to exercise 45-minutes three times per week while. (D.I. 72 at 7.) Thus, there is no genuine dispute for trial regarding the amount of exercise provided.

[5] Sections 4322(c) & (d) provide that:

> (c) No inmate shall be provided a copy of the Department of Correction Policy and Procedures Manuals, The Bureau of Prisons Policy and Procedures Manuals, nor any of the Department of Correction Facilities Operational Procedures, Administrative Regulations and Post Orders.
>
> (d) The Department of Correction Policies and Procedures, including any Policy, Procedure, Post Order, Facility Operational Procedure or Administrative Regulation adopted by a Bureau, facility or department of the Department of Correction shall be confidential, and not subject to disclosure except upon the written authority of the Commissioner.

11 Del. C. §§ 4322(c) & (d).

7

witnesses at his hearing. (D.I. 81.) Thus, the court grants the Motion as to this claim.

**D. Search & Seizure**

Inmates have no privacy rights in their cells, and, thus, there is no constitutional prohibition against prison officials conducting cell searches. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). Searches are an important part of prison security. *Id.* Accordingly, prison officials are entitled to unfettered access without being subjected to claimed violations under the Fourth Amendment to the Constitution. *Id.* at 27. However, searches that constitute "calculated harassment unrelated to prison needs" are not necessarily permissible. *Id.* at 530. "Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity." *Id.*

Chairez alleges that since his transfer to SHU his cell has been subjected to unwarranted searches; three times a day. (D.I. 11.) While perhaps frequent, there is no basis in the current record for the court to conclude that these searches were unrelated to prison needs and for the purpose of harassment. As currently presented, the claim lacks an arguable basis in law or in fact and must, therefore, be denied.

**V.    CONCLUSION**

For aforementioned reasons, the court will grant in part and deny in part the Defendants' Motion for Summary Judgment.

Dated: September 12, 2017

UNITED STATES DISTRICT JUDGE

8